O

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ERIC LINELL SHELMIRE, Plaintiff, v. J. YATES, Warden, Defendants.

Case No. CV 06-1058-VAP

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS FILED BY A STATE PRISONER**

## I. BACKGROUND

Petitioner, a state prisoner proceeding pro se, filed a Petition for Writ of Habeas Corpus on May 15, 2006 ("Petition"). Respondent filed an Answer on July 31, 2006. Petitioner filed a traverse in opposition to the Answer on October 25, 2006. For the reasons stated below, the Court DENIES the Petition.

### A. Statement of Facts

Decedent Justin Roberts lived with his girlfriend Sally Lewis, their two children, Lewis's brother, and Roberts's friend Eric Aguiar. (Lodged Doc. No. 1 at 3-

4.) Roberts legally grew marijuana on his patio for medicinal purposes, which he also sold. (Id. at 4.) In September, 2001, Aguiar agreed to sell marijuana to codefendant Craver. (Id.) After the sale took place, Roberts discovered that the cash Craver used to pay was counterfeit. (Id.)

Around 4:00 a.m. on September 14, 2001, Craver jumped through an open window and into the living room of Roberts's apartment, landing on top of Aguiar, where the two began to scuffle. (Id. at 4-5.) Lewis and Roberts ran to the living room, and three gunshots rang out. (Id. at 5.) Roberts was next seen lying in a pool of blood, dying of a gunshot wound to the chest. (Id.)

**Petitioner's Statements**

In a September 14, 2001 interview, Petitioner first claimed he had been at a party in the neighborhood and knew nothing about what had happened inside the apartment. (Id. at 6-7.) Later in the same interview, Petitioner admitted that Craver knocked on his door at 2:30 a.m. and asked Petitioner to come along to get money and marijuana from Craver's brother. (Id. at 7.) They met up with another man and went to Roberts's apartment. (Id.) Petitioner remained in the car when Craver entered the apartment. (Id.) After a while, Petitioner got out

of the car to look for the others when he heard gun shots and ran off. (Id.)

In a September 15 interview, Petitioner admitted to making up the first September 14 story. (Id.) Petitioner also admitted to withholding facts from his second story. (Id. at 8.) He now claimed he headed toward the open window after seeing Craver enter the apartment complex. (Id.) He heard tussling and gunshots, but he said he had not seen a gun before entering the complex. (Id.)

In a September 20 interview, Petitioner again changed his story. (Id.) Petitioner claimed Craver showed up at Petitioner's home with a duffel bag containing nunchakus, small knives, and a "death manual" about ways to hurt people. (Id. at 9.) Craver told Petitioner about marijuana dealers whom he had given counterfeit money and thought it would be easy to burglarize them of money and marijuana. (Id.) Petitioner agreed. (Id.)

When Craver returned in the early morning hours, Craver told Petitioner they would get a third person. (Id.) At the apartment, all three men walked to the gate and Craver used a code to open it. (Id.) The other man carried a duffel bag, while Craver slid open a window with gloved hands. (Id.) Petitioner stayed twenty feet from the window before he heard struggling and gunshots.

(Id. at 10.) Craver fled through the window and Petitioner asked him what happened; Craver said he did not know. (Id.) They ran together, jumped a fence, then split up. (Id.) Petitioner explained they went to the apartment "without a plan." (Id.)

**B. Procedural History**

On August 20, 2003, a jury convicted Petitioner in California Superior Court, County of Sacramento, of first degree murder while in possession of a firearm. (Clerk's Transcript on Appeal ("CT") at 647.) The jury rejected the special circumstance allegation of murder in the commission of an attempted robbery and in the course of a burglary. (Id. at 648.) Petitioner was sentenced to twenty-five years to life for the murder, plus one year for the weapon enhancement. (Id. at 14.)

Petitioner appealed his conviction with the California Court of Appeal, Third Appellate District, which affirmed the judgment on June 29, 2005. (Answer at 2.) Petitioner filed a petition for review with the California Supreme Court on August 28, 2005. (Id.) On October 19, 2005, the California Supreme Court denied the petition for review. (Id.)

**C. Petitioner's Claims**

Petitioner filed this petition on May 15, 2006, and asserts the following grounds for federal habeas corpus relief:

1. The Court failed to instruct the jury on the burden of proof on Petitioner's withdrawal defense;

2. The trial court erred in instructing the jury on Petitioner's withdrawal defense, particularly its response to the jury's request for clarification;

3. The trial court abused its discretion when it granted the prosecutor's motion for separate juries for Petitioner and codefendant Jones;

4. The trial court erred in denying Petitioner's motion for mistrial;

5. The trial court abused its discretion when it refused the jury's request to hear a read-back of defense counsel's closing argument;

6. The trial court erred in denying Petitioner's motion for a new trial;

7. Cumulative prejudice requires reversal.

## II. LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs the Court's review of this Petition because the Petition was filed after its effective date. Under 28 U.S.C. § 2254(a), "a district court shall entertain an application for a writ of habeas

corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

Under AEDPA, a federal court must defer to a state court's holding unless it was in "conflict with the reasoning or holdings of [Supreme Court] precedent" or if it "applied harmless-error review in an 'objectively unreasonable' manner." Inthavong v. Lamarque, 420 F.3d 1055, 1058-59 (9th Cir. 2005) (citing Mitchell v. Esparza, 540 U.S. 12, 17-18 (2003)).

To grant relief where a state court has determined that a constitutional error was harmless, a federal court must both determine (1) that the state court's decision was "contrary to" or an "unreasonable application" of Supreme Court harmless error precedent, and (2) that the petitioner suffered prejudice under Brecht v. Abrahamson, 507 U.S. 619 (1993), from the constitutional error. Inthavong, 420 F.3d at 1059. Errors are harmless if they do not have a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637.

## III. DISCUSSION

All of Petitioner's claims here were heard and rejected by the California Court of Appeal. As to each claim, the state court's decision was not "objectively unreasonable" and did not cause Petitioner to suffer prejudice.

### A. Petitioner's First, Second, and Fifth Claims

Petitioner's first, second, and fifth claims relate to the trial court's jury instructions regarding the withdrawal defense. Claim one alleges the trial court failed to instruct the jury as to the burden of proof for the defense; claim two alleges the trial court erred when it responded to the jury's request for legal definition clarifications; and claim five alleges the trial court erred by denying the jury's request for a read-back of defense's closing argument on the withdrawal defense.

As to claim one, the trial court did instruct the jury on the withdrawal defense,[1] but it did not instruct

---

[1] The trial court instructed the jury on the withdrawal defense with California Jury Instructions - Criminal ("CALJIC") 3.03. (See Lodged Doc. No. 1 at 12.) The instruction was as follows:

> Before the commission of the crimes charged an aider and abett[o]r may withdraw from participation in those crimes and thus avoid responsibility of [*sic*] those crimes by doing two things: First, he must notify the other principals known to him of his intention to withdraw from the commission of those crimes. Second, he must do everything

(continued...)

the jury on the burden of proof as to the defense. (Lodged Doc. No. 1 at 12.) As to claim two, the jury asked for clarifications of the legal meanings of the word "notify" and the phrase "everything in his power" in the instruction. (Id. at 13.) The court responded by giving a clarifying instruction. (Id.) As to claim five, the jury asked for "Defense's closing arguments about 'communication of intent to withdraw.'" (CT at 622, 624.) The trial court responded that because attorneys' arguments are not evidence, a jury is not allowed to hear a read-back of the argument. (Id. at 634.)

The California Court of Appeal found these errors were harmless, because Petitioner was not entitled to an instruction on the withdrawal defense. (Lodged Doc. No. 1 at 12, 16.) We have reviewed the record and agree with the Court of Appeal that there is no evidence to support the defense. The Court of Appeal reasoned that viewing the evidence in the light most favorable to Petitioner, he never communicated with the other defendants that he was withdrawing from participation in the crime, and there was no evidence Petitioner tried to prevent the crimes from occurring. (Id. at 16.) As Petitioner was not entitled to an instruction on the withdrawal defense,

---

[1](...continued) in his power to prevent its [*sic*] commission.

any errors made with respect to the defense were harmless.

Having reviewed the record, this Court finds the Court of Appeal's decisions as to claims one, two, and five were not objectively unreasonable.

**B. Petitioner's Third Claim**

Petitioner claims the trial court erred in granting the prosecution's request for separate juries for each defendant. Petitioner argues that this prevented his jury from hearing an exculpatory statement[2] which would have been admissible if he and codefendant Jones were tried before a single jury.

The Court of Appeal rejected this claim, because the trial court had discretion to grant the prosecutor's request for separate juries based on the parties' representations that Aranda/Bruton[3] problems would arise in a joint trial. (Id. at 24, 28.) Furthermore, the Court of Appeal found that any statement made by Jones would not have exculpated Petitioner, because the

[2]Codefendant Jones told the police that Petitioner "didn't do anything" and agreed with the Detective's statement that Petitioner "chickened out." (Lodged Doc. No. 1 at 27 n.9.)

[3]People v. Aranda, 63 Cal.2d 518 (1965); Bruton v. United States, 391 U.S. 123 (1968) (holding admission of codefendant's confession implicating defendant in joint trial constitutes prejudicial error).

statements still placed Petitioner at the scene as a co-principal. (Id. at 28.)

Federal courts accept the use of dual juries. Lambright v. Stewart, 191 F.3d 1181, 1185 (9th Cir. 1999). The use of separate juries is not per se constitutional error. (Id. at 1186.) A federal court should affirm a state court dual jury verdict unless the defendant can show the procedure prejudiced him. Beam v. Paskett, 3 F.3d 1301, 1303-04 (9th Cir. 1993). The record supports the finding of the Court of Appeal that Petitioner does not show prejudice resulted from the use of separate juries. While Jones's statement may help Petitioner articulate the argument that he communicated his intent to withdraw, the argument ultimately fails because there is still no evidence that Petitioner tried to prevent the crime.

Petitioner has not shown the decision of the Court of Appeals was contrary to clearly established federal law or involved an unreasonable application of clearly established federal law. See 28 U.S.C. § 2254(d)(1). Thus, the Court of Appeal decision was not objectively unreasonable.

**C. Petitioner's Fourth Claim**

Petitioner claims the trial court erred by denying his motion for mistrial after a police officer testified as to Petitioner's parole status.

Petitioner moved in limine to exclude any reference to Petitioner's parole history. (Lodged Doc. No. 1 at 29.) The prosecutor wanted to use the evidence to impeach Petitioner in the event he testified at trial. (Id.) The court delayed ruling on the motion, stating it would rule if counsel could not agree on how the evidence could be used for impeachment. (Id.) From the record, it does not appear that the court ever made a ruling. (Id.)

During trial, an officer testified that Petitioner, at the time of his arrest, had already been in custody for a parole violation. (Id. at 30.) Petitioner's counsel objected and moved to strike the reference to the parole violation. (Id.) The court sustained the objection, struck the testimony from the record, and admonished the jury not to consider the information for any purpose. (Id.) Petitioner later moved for a mistrial, which the trial court denied because the information was revealed unintentionally, "no one had acted in bad faith" and the "court's immediate response" was sufficient to protect Petitioner. (Id. at 30-31.)

On federal habeas review, federal courts do not review questions of state evidence law but may only consider whether Petitioner’s conviction violated constitutional norms. Jammal v. Van De Kamp, 926 F.2d 918, 919 (9th Cir. 1991). The Court of Appeal found insignificant a reference to Petitioner’s parole violation compared to the overwhelming evidence establishing Petitioner’s guilt as an aider and abettor. (Lodged Doc. No. 1 at 32.) This Court has reviewed the record and agrees with the California Court of Appeal that the reference to Petitioner's parole violation did not prevent a fair trial nor prejudice Petitioner because Petitioner's parole status was merely a peripheral point. Petitioner admitted to knowingly joining the codefendants in a criminal scheme, causing evidence of his parole history, even if evidence of his criminal background, to "[pale] into insignificance." (Id.)

Thus, the Court of Appeal’s decision was not objectively unreasonable.

**D. Petitioner’s Sixth Claim**

Petitioner claims the trial court erred by denying his motion for a new trial based on denial of his right to testify. Petitioner learned that codefendant Craver threatened to kill Petitioner if he testified. (Id. at 35.) Petitioner was scheduled to testify in August,

2003, but he and his counsel had been aware of the death threat since 2001. (Id.) Petitioner was placed in protective custody, and Petitioner's counsel strongly urged Petitioner to testify because the likely consequence of not testifying was a guilty verdict. (Id. at 35-36.) Craver's co-counsel, Lisa Franco, advised Petitioner and Petitioner's counsel that she believed Craver's threat was "imminent and serious." (Id. at 36.) Petitioner refused to testify, and the trial court denied Petitioner's motion after conviction for a new trial, finding no legal basis for the request. (Id. at 36-38.)

An accused's right to testify is a constitutional right of fundamental dimension. Rock v. Arkansas, 483 U.S. 44, 51-53 (1987); United States v. Joelson, 7 F.3d 174, 177 (9th Cir. 1993). The right may be relinquished only by the defendant, and the relinquishment must be knowing and intentional. United States. v. Pino-Noriega, 189 F.3d 1089, 1094 (9th Cir. 1999) (citing Joelson, 7 F.3d at 177).

The Court of Appeal affirmed the trial court's denial of the motion, because Petitioner made his own decision not to testify, after having been fully informed of the consequences of such a decision. (Lodged Doc. No. 1 at 37.) Thus, on review of the record, the Court is satisfied Petitioner intentionally and knowingly

relinquished his right to testify. Furthermore, the Court of Appeal determined that Petitioner would not have had a reasonable probability of obtaining a better result had he testified. (Id. at 38.) Thus, denial of a new trial did not prejudice Petitioner, and the Court of Appeal's decision was not objectively unreasonable.

**E. Petitioner's Seventh Claim**

Petitioner claims he has suffered cumulative prejudice from the totality of the errors in his case. For the above reasons, no errors prejudiced Petitioner. Thus, he did not suffer cumulative prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus is DENIED.

Dated: July 27, 2009

VIRGINIA A. PHILLIPS
United States District Judge